UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------ x
MARASH GOJCAJ,                                               :
                                                             :
                        Plaintiff,                           :
                                                             :       **INITIAL REVIEW**
            -against-                                        :       **ORDER**
                                                             :
SYED NAQVI et al.,                                           :
                                                             :       3:23-CV-01097 (VDO)
                        Defendant(s).                        :
------------------------------------------------------------ x

**VERNON D. OLIVER**, United States District Judge:

Self-represented plaintiff Marash Gojcaj ("Plaintiff") is a sentenced inmate currently incarcerated at the Cheshire Correctional Institution. Plaintiff brings this action *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 against twenty-four individuals who are allegedly either Connecticut Department of Correction ("DOC") or University of Connecticut ("UCONN") Health Center employees, claiming that they violated the Eighth Amendment by failing to provide him with adequate medical treatment for his physical and mental health issues. Doc. No. 1 ("Complaint").

Plaintiff does not clearly explain his claims, nor does he allege a specific claim against each of the individual defendants for specific relief. Moreover, Plaintiff may not seek damages against the DOC and its employees in their official capacity. *Kelly v. New York State Unified Ct. Sys.*, 2022 WL 1210665, at *1 (2d Cir. Apr. 25, 2022). Therefore, the Court determines that Plaintiff has not made out a *prima facie* case that Defendants acted with "deliberate indifference" in violation of the Eighth Amendment, and it cannot proceed further based on Plaintiff's current Complaint.

If Plaintiff wishes to pursue his claims, he shall file an Amended Complaint on or before **December 11, 2023**. The Amended Complaint shall identify the claims he intends to pursue against each defendant, and shall include simple, concise, and direct allegations with facts supporting each raised claim.

I.      BACKGROUND

Plaintiff alleges the following facts: Plaintiff suffers from a keloid in the middle of his chest and has a hernia. Compl. ¶ 1. While incarcerated at the MacDougall-Walker Correctional Institution, Plaintiff informed DOC medical staff about his painful keloid, hernia, and left testicle conditions in 2008, and about blood in his stool in 2011. *Id.* ¶¶ 1-8. Plaintiff's allegations indicate that he received medical attention, including pain medication, for his hernia, left testicle, and keloid from 2008 through 2013. *Id.* ¶¶ 2, 7, 10, 12.

Plaintiff further alleges that in 2016, he informed defendant Dr. Syed Naqvi that steroid injections were not effective for his keloid, but Dr. Naqvi insisted on ordering injections of Kenalog, a steroid, in February, June, and September 2016. *Id.* ¶¶ 13-17. Plaintiff allegedly never received these injections. *Id.* ¶ 17. In July 2018, Plaintiff went to the UCONN Health Center, where defendant Dr. Preeti Jhorar prescribed steroid patches for his keloid. *Id.* ¶ 18.

In 2019, Plaintiff informed, and was seen by, medical staff about pain in his lower left abdomen, stating that his hernia was worsening. When asked about the delay in treatment, Plaintiff was informed that he was "on the list." *Id.* ¶¶ 19-21. In December 2019, June 2020, and August 2020, Plaintiff once again saw medical staff about his painful keloid condition. *Id.* ¶¶ 22-24. Plaintiff filed a grievance in February 2021 about not being called for "sick call" for his keloid pain, headaches, hernia, blood in his stool, and need for a colonoscopy. *Id.* ¶ 26. Plaintiff's grievance was returned without disposition. *Id.*

On May 11, 2021, Plaintiff was transported to the UCONN Health Center, where he had consultations for hernia and keloid surgeries.[1] *Id.* On June 13, 2021, correctional medical staff emailed the facility's mental health staff about Plaintiff's "embarrassing bathroom issues." *Id.* ¶ 30. Plaintiff later wrote to the mental health staff, even though it went "against how [he] was raised." *Id.* ¶ 31. When Plaintiff met with a mental health staff member on June 30, 2021, a Dr. L. Pieri, Plaintiff requested an assignment for a single cell, but was informed that mental health staff could not make the assignment. *Id.* ¶ 35. A week later, Plaintiff saw defendant APRN Caplan to discuss his medical issues, but she was allegedly "rude, dismissive, and very condescending." *Id.* ¶ 38.

When Plaintiff later wrote to mental health staff for assistance, he was offered "brain chemical altering" pills that he refused and deemed "not necessary." *Id.* ¶¶ 42-43. In October 2021, Plaintiff wrote to defendant Warden Barone and asked if his issues would be taken seriously if he went on a hunger strike. *Id.* ¶ 47. Later that month, he again wrote to Warden Barone to explain his medical issues and his interactions with medical staff. *Id.* ¶ 48.

Plaintiff filed a state petition for *habeas corpus* relief in November 2021, and was transferred to the Cheshire Correctional Institution in December 2021. *Id.* ¶¶ 49-50. In June and September 2022, Plaintiff went to the UCONN Health Center for consultations regarding his keloid and hernia. *Id.* ¶¶ 56-57. Plaintiff's request for a single cell was also granted in September 2022, and he withdrew his habeas petition. *Id.* ¶ 58.

On February 6, 2023, Plaintiff was informed that his hernia surgery was still "awaiting scheduling" and that "a course of action" was still to be determined for his painful keloid. *Id.*

---

[1] Plaintiff alleges that he was roused from his sleep at 3:00 AM, strip searched, and shackled and that after he was brought to UCONN Health Center, he was handcuffed to a chair all day. *Id.* ¶ 29.

¶ 59. On March 30, 2023, Plaintiff wrote to the DOC Medical Director for Health Services about his medical issues, but received no response. *Id.* ¶ 61. He also filed grievances about his medical deprivations concerning his keloid and hernia, which were upheld on April 25, 2023. *Id.* ¶ 62.

In April 2023, Plaintiff went to the UCONN Health Center for a colonoscopy consultation, but had not received a colonoscopy at the time of filing of the Complaint. *Id.* ¶ 63. On June 20, 2023, Plaintiff had a radiation consultation at the UCONN Health Center about his painful keloid. *Id.* ¶ 64. Plaintiff refiled a state petition for *habeas corpus* relief for "cruel and unusual punishment" in August 2023. *Id.* ¶ 67.

Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

II.     **LEGAL STANDARD**

Under 28 U.S.C. § 1915A, courts must review prisoner civil complaints in which a prisoner seeks redress from a governmental entity and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability

requirement" but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). However, the court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678.

With respect to *pro se* litigants, it is well-established that "[p]*ro se* submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam)). *See also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[a] document filed *pro se* is 'to be liberally construed[]'") (internal citation omitted). This liberal approach, however, does not exempt *pro se* litigants from the minimum pleading requirements described above: a *pro se* complaint still must "'state a claim to relief that is plausible on its face.'" *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 678). Therefore, even in a *pro se* case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted).

*Pro se* litigants are required to comply with Rule 8 of the Federal Rules of Civil Procedure. *See, e.g.*, *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004) ("[T]he basic

requirements of Rule 8 apply to self-represented and counseled plaintiffs alike."). Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration in original). A statement of claim that is not short and direct places "an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.'" *Harden v. Doe*, No. 19-CV-3839(CM), 2019 WL 2578157, at *2 (S.D.N.Y. June 24, 2019) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)) (internal quotation marks and citation omitted). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

### III. DISCUSSION

#### A. Eighth Amendment

Plaintiff fails to sufficiently allege a violation of the Eighth Amendment through his Section 1938 claim of inadequate medical care. Plaintiff generally alleges that Defendants violated the Eighth Amendment by failing to provide: (1) adequate treatment for his keloid pain; (2) adequate treatment for his hernia; (3) a timely colonoscopy to examine his gastrointestinal issues; (4) and a single cell in light of his mental health issues.[2]

The Supreme Court has long recognized that prison officials violate the Eighth Amendment if they are deliberately indifferent to the serious medical and mental health needs of a sentenced prisoner. *See Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (citing

---

[2] Plaintiff also alleges that he informed medical staff about pain in his left testicle in 2008 and 2012 (Compl. ¶¶ 5, 10), but he fails to allege additional facts to describe this condition or how any defendant acted with conscious disregard to this medical condition.

6

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). The inmate must show that "(1) objectively, the alleged deprivation of medical care was 'sufficiently serious,' and (2) subjectively, that the defendants acted or failed to act 'while actually aware of a substantial risk that serious inmate harm will result.'" *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006)). A prisoner must allege facts to suggest that the defendants acted not merely carelessly or negligently, but with a subjectively reckless state of mind akin to criminal recklessness. *Dunbar v. Dep't of Correction*, No. 3:22-CV-627 (JAM), 2023 WL 143164, at *5 (D. Conn. Jan. 10, 2023). It is not enough to allege medical malpractice unless the malpractice involves culpable recklessness—actions that evince a conscious disregard of a substantial risk of serious harm. *See Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

To be "sufficiently serious," the deprivation of medical care must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hill*, 657 F.3d at 122. Where a prisoner receives some care, but allegedly inadequate care or a delay in the care, the court's consideration of the seriousness of the plaintiff's condition must examine both the prisoner's medical conditions and the harm caused by the offending conduct. *Lombardo v. Graham*, 807 F. App'x 120, 123 (2d Cir. 2020) (courts examine both the seriousness of the prisoner's medical conditions and the harm caused by any unreasonable delay).

Here, Plaintiff fails to sufficiently allege how the DOC and UCONN Health Center medical staff were "deliberately indifferent" to his serious medical needs. Plaintiff admits that medical staff examined and treated his keloid and hernia on multiple occasions over the years. *See, e.g.*, Compl. ¶¶ 2, 7, 10, 12, 13, 18, 19, 20, 22, 24, 25, 29, 38, 56, 57, 63, 64. Additionally,

while Plaintiff's allegations reflect his disagreement with medical decisions to treat his keloid with steroids, an inmate's disagreement with a medical provider about his medical treatment is not sufficient to state an Eighth Amendment violation. *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998); *Hill v. Curcione,* 657 F.3d 116, 123 (2d Cir. 2011) ("It has long been the rule that a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment."). Similarly, with respect to Plaintiff's claim about his delayed colonoscopy, inmates do not have a constitutional right to perfectly on-schedule routine, preventative health screenings. *See Ostroski v. Doe*, 2012 WL 5448331 at *3 (D. Conn. Nov. 7, 2012) (colonoscopy scheduling delay did not give rise to a cognizable deliberate indifference claim). And simply alleging that a medical professional (here, APRN Jean Caplan) was "rude, dismissive, and very condescending" (Compl. ¶ 38) is not enough to demonstrate that she had a "subjectively reckless state of mind akin to criminal recklessness." *Dunbar*, 2023 WL 143164, at *5.

      Plaintiff also admits that shortly after he was convinced that he would "finally be properly treated," he had consultations for keloid and hernia surgeries at the UCONN Health Center. *Id.* ¶¶ 28-29. He has had further consultations regarding his keloid and hernia earlier this year. *Id.* ¶¶ 63-64. What is more, he was offered medication to treat his mental health issues, which he refused, and was assigned a single cell as he requested. *Id.* ¶¶ 42-43, 58. Therefore, the Court concludes that Plaintiff has not sufficiently alleged facts that establish a *prima facie* case that Defendants acted with "deliberate indifference" in the treatment of Plaintiff's medical concerns.

**B.     Individual Defendants**

Plaintiff fails to allege how each of the twenty-four defendants individually contributed to the constitutional violation he claims. Plaintiff must allege the personal involvement of the defendant in causing the constitutional violation for each defendant against whom he seeks damages. *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983").

Plaintiff asserts a claim for damages against DOC Director of Health John Doe and Jane Doe; DOC Commissioners Lantz, Arnon, Semple, Cook, and Quiros; UCONN Health Center CEO John Doe; and Wardens Murphy, Strange, Chapdelaine, and Mulligan. The Second Circuit has held that "there is no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Accordingly, for deliberate indifference claims, "the plaintiff must plead and prove that the supervisor had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it." *Id.* at 616.

Plaintiff alleges that he received no response to a letter he sent to the DOC Director of Health. Compl. ¶ 61. But mere receipt of a communication is insufficient to show personal involvement. *Lopez v. Chappius*, No. 6:17-CV-96395 EAW, 2021 WL 859384, at *2 (W.D.N.Y. Mar. 8, 2021) ("Even before *Tangreti*, it was well-established that a supervisor's failure to respond to a letter of complaint does not provide a sufficient basis to find the defendant was personally involved in the deprivation alleged[.]") (internal quotation marks omitted); *Tangreti*, 983 F.3d at 616–17 ("A supervisor's 'mere knowledge . . .' is not sufficient because that knowledge does not 'amount[ ] to the supervisor's violating the Constitution.'")

(internal citation omitted; alteration in original). Therefore, Plaintiff cannot seek to hold these supervisory defendants liable for damages merely based on their supervisory positions.

Plaintiff also names APRN Morozov and Dr. Omprakash Pillai as defendants, but does not allege any facts describing how Morozov or Dr. Pillai violated his federal or constitutional rights. Consequently, any claims against these two defendants must also be dismissed.

### C. Plaintiff's Requests for Relief

#### 1. Punitive and Compensatory Damages

Plaintiff seeks compensatory and punitive damages against all defendants in both their official and individual capacities. Compl. at p. 16 ("Request for Relief"). Pursuant to the Eleventh Amendment, Plaintiff may not proceed against the defendants in their official capacity for money damages. *See Kelly v. New York State Unified Ct. Sys.*, 2022 WL 1210665, at *1 (2d Cir. Apr. 25, 2022) ("The Eleventh Amendment confirms that states, state entities, and state officials acting in their official capacities have sovereign immunity from suit."). Plaintiff may not proceed against the defendants in their official capacity for damages.

#### 2. Injunctive Relief

Plaintiff seeks injunctive orders for a colonoscopy and medical care for his hernia and keloid. Compl. at p. 16 ("Request for Relief"). He also requests that the DOC update its medical system, record all medical visits, and eliminate the inmate copy for "sick calls." *Id.*

Individuals may seek injunctive relief against a state official in their official capacity only to the extent that they allege an ongoing violation of the constitutional rights for which a federal court may enter an order of prospective relief against that official in his official capacity. *See, e.g.*, *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)); *Silva v. Farrish*, 47 F.4th 78, 84 (2d Cir. 2022). The

10

personal involvement of a defendant in the alleged constitutional violation is not a prerequisite to official capacity claims for injunctive relief, but a claim for injunctive relief against an official capacity defendant may proceed only to the extent that the defendant has the authority to remedy the alleged ongoing constitutional violation. *Breton v. Lamont*, 2021 WL 3726011, at *7 (D. Conn. Aug. 23, 2021) (citations omitted). Because Plaintiff has failed to sufficiently allege an ongoing constitutional violation, Plaintiff does not have a basis to seek injunctive relief from any defendant in their official capacity. Moreover, to the extent Plaintiff seeks injunctive relief from any officials employed at the MacDougall-Walker Correctional Institution, Plaintiff may not do so as he is no longer incarcerated at that facility. *See Washington v. McKoy*, 816 F. App'x 570, 572–73 (2d Cir. 2020) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.") (internal citation and quotation marks omitted).

Federal courts can order prospective relief "in any civil action with respect to prison conditions," provided it "extend[s] no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a). Thus, Plaintiff's request for a remedial order "that unnecessarily reach[es] out to improve prison conditions other than those that violate the Constitution" must be rejected. *Brown v. Plata*, 563 U.S. 493, 531 (2011). Likewise, Plaintiff's request for an order to protect him from First Amendment retaliation exceeds the scope of any alleged Eighth Amendment violation raised in the Complaint. Plaintiff's requests for injunctive relief must be dismissed.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE**. Plaintiff may file an Amended Complaint on or before **December 11, 2023.**

The Amended Complaint shall identify the claims he intends to pursue against each defendant and include simple, concise, and direct allegations alleging the fact supporting each claim.

**SO ORDERED.**

Hartford, Connecticut
November 9, 2023

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge