UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------- x

MARASH GOJCAJ,                                           :
                                                         :
                            Plaintiff,                   :
                                                         :          **INITIAL REVIEW**
            -against-                                    :          **ORDER**
                                                         :
SYED NAQVI ET AL.,                                       :          3:23-cv-1097 (VDO)
                                                         :
                            Defendants.                  :
---------------------------------------------------------------- x

**VERNON D. OLIVER**, United States District Judge:

Plaintiff, Marash Gojcaj, is a prisoner in the custody of the Connecticut Department of Correction ("DOC"). He filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 against twenty-four individuals, who are allegedly either DOC or UConn Health Center employees. (ECF No. 1.) On initial review, the Court dismissed Plaintiff's original complaint with the opportunity to file an amended complaint. (ECF No. 7.) In his Amended Complaint ("FAC," ECF No. 15), Plaintiff brings claims of constitutional violations against Drs. Syed Naqvi, Umprakash Pillai, Francesco Lupis, Yu Liang, Andrew Chen, L. Pieri, Preeti Jhorar, and Reid Waldman; MBBS Al-Houssan; APRNs Jean Caplan and Elina Morozov; Director of Health John/Jane Doe; DOC Commissioners Theresa Lantz, Leo Arnone, Scott Semple, Rollin Cook, and Angel Quiros; UConn Health CEO John Doe; and MacDougall-Walker Correctional Institution ("MacDougall") Wardens Brian Murphy, Mark Strange, Chapdelaine, William Mulligan, and Kristine Baron.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the

complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). The Court has thoroughly reviewed all factual allegations in the Amended Complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.

## I.   <u>BACKGROUND</u>

Plaintiff alleges that DOC and UConn staff failed to properly treat his keloid and hernia. In 2016, he informed Dr. Naqvi that steroid injections were not effective for his keloid, but Dr. Naqvi insisted on ordering injections of Kenalog (a steroid) in February, June, and September 2016. (FAC ¶¶ 12, 13, 14, 16.) Plaintiff never received these injections even after Dr. Naqvi ordered the Kenalog with a notation of A.S.A.P. in September 2016. (*Id.* ¶ 16.)

In July 2018, Plaintiff went to the UConn Health Center where Dr. Jhorar prescribed steroid patches for his keloid, although these patches had not previously worked for Plaintiff's condition. (*Id.* ¶ 17.)

In March, April, and December 2019, Plaintiff informed medical staff about his lower left abdomen pain, indicating that his hernia was worsening. When asked about the delay in treatment, Plaintiff was informed that he was "on the list." (*Id.* ¶¶ 18-20.)

In December 2019, Plaintiff saw medical staff about his painful keloid condition. (*Id.* ¶ 21.)

In June and August 2020, Plaintiff saw APRN Caplan about his keloid pain, but she was rude and dismissive. (*Id.* ¶ 23.) She repeatedly referred to his keloid condition as a "cosmetic" issue. (*Id.* ¶ 24.)

In February 2021, Plaintiff filed a grievance about not being called for "sick call" for his keloid pain, headaches, hernia, blood in his stool, and need for a colonoscopy; the grievance was returned without disposition. (*Id.* ¶ 25.)

In March 2021, Dr. Lupis indicated that Plaintiff would receive proper medical treatment. (*Id.* ¶ 27.)

On May 11, 2021, Plaintiff was transported to UConn Health Center, where he was scheduled for consultations for hernia and keloid surgery. (*Id.* ¶ 28.) At his consultation, Dr. Liang, Dr. Chen, and MBBS Houssan recognized that Plaintiff suffered from keloid and hernia pain and bowel movement changes; they also noted that Plaintiff experienced exacerbating symptoms that affected his daily activities with bowel movements, coughing, sneezing, and laughing. (*Id.* ¶ 29.)

On June 13, 2021, correctional medical staff sent an email to the mental health staff about Plaintiff's embarrassing "bathroom issues." (*Id.* ¶ 30.) After Plaintiff later wrote to the mental health staff for help, he was advised to contact medical staff. (*Id.* ¶¶ 31-32.)

On June 30, 2021, Plaintiff requested an assignment for a single cell from Dr. Pieri, a mental health staff member, for anxiety and bathroom issues stemming from his hernia. (*Id.* ¶ 36.) Warden Barone had informed him that mental health staff could make the assignment. (*Id.*) However, Plaintiff was subsequently informed that mental health staff could not make the assignment. (*Id.* ¶ 30.)

In July 2021, Plaintiff again saw APRN Caplan, but she was rude and dismissive. (*Id.* ¶ 39.) She advised him to see mental health staff. (*Id.*) Plaintiff then made a written request to have a different health care provider other than APRN Caplan, but this request was denied. (*Id.* ¶ 40.)

When Plaintiff later wrote to mental health staff for assistance, he was only offered pills, which he refused. (*Id.* ¶¶ 42-43.) Dr. Pieri raised his mental health level from a one to a three and again offered to provide him with pills. (*Id.* ¶¶ 44.)

In September 2021, Plaintiff wrote to mental health staff again to explain that they were making him feel weaker and more vulnerable. (*Id.* ¶ 45.) In October 2021, he received a response stating that mental health staff could not provide him with a single cell, although the warden stated otherwise. (*Id.* ¶ 47.)

Plaintiff wrote to Warden Barone and asked if his issues would be taken seriously if he went on a hunger strike. (*Id.* ¶ 48.) Later that month, he wrote a letter to Warden Barone to explain all his issues and his interactions with mental health and medical staff. (*Id.* ¶ 49.)

In November 2021, Plaintiff filed a state petition for habeas corpus relief. (*Id.* ¶ 50.)

On December 16, 2021, Plaintiff was taken out of his cell, strip searched and placed in segregation without explanation. (*Id.* ¶ 51.) The next day, Plaintiff was strip searched again and transferred to Cheshire Correctional Institution. (*Id.* ¶ 52.)

In February 2022, Plaintiff wrote a request to mental health staff about being assigned single cell status. (*Id.* ¶ 54.) He also wrote to the medical staff to request medical attention and inquire why he had not been called despite signing up for "sick call." (*Id.* ¶ 55.)

On June 21, 2022, Plaintiff went to UConn Health Center for a consultation about his painful keloid. (*Id.* ¶ 56.) On September 13, 2022, Plaintiff went to UConn Health Center again to have another consultation about his hernia. (*Id.* ¶ 57.)

On September 16, 2022, Plaintiff withdrew his habeas petition as he had received a single cell and had been advised that he would have his keloid and hernia surgeries within six months. (*Id.* ¶ 58.)

On February 6, 2023, Plaintiff was informed that his hernia surgery was still "awaiting scheduling" and that "a course of action" was still to be determined for his painful keloid. (*Id.* ¶ 59.)

On March 8, 2023, Plaintiff was transported to UConn Health Center but did not see any medical professional about his conditions. (*Id.* ¶ 60.) Later that month, Plaintiff wrote to the DOC Medical Director for Health Services about his medical issues but received no response. (*Id.* ¶ 61.) He also filed grievances about his medical deprivations concerning his keloid and hernia, which were upheld on April 25, 2023. (*Id.* ¶ 62.)

On April 12, 2023, Plaintiff went to the UConn Health Center for the colonoscopy consultation that he was signed up for two years earlier. (*Id.* ¶ 63.) Plaintiff is still waiting for a colonoscopy despite his complaint of having blood detected in his stool and irregular bowel movements. (*Id.*)

On June 20, 2023, Plaintiff finally had a radiation consultation at UConn Health Center about his painful keloid. (*Id.* ¶ 64.)

In August 2023, Plaintiff filed another state habeas action, asserting Eighth Amendment violations. (*Id.* ¶ 66.) As Plaintiff has received a single cell, his toileting and his hernia issues have improved. (*Id.*)

## II.   <u>**LEGAL STANDARD**</u>

Under 28 U.S.C. § 1915A, courts must review prisoner civil complaints in which a prisoner seeks redress from a governmental entity and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement" but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). However, the court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678.

With respect to *pro se* litigants, it is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam)). However, *pro se* litigants are still required to comply with Rule 8 of the Federal Rules of Civil Procedure. *See, e.g.*, *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004) ("[T]he basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike."). Rule 8 requires that a complaint contain "a short and plain

statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration in original). A statement of claim that is not short and direct places "an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.'" *Harden v. Doe*, No. 19-CV-3839(CM), 2019 WL 2578157, at *2 (S.D.N.Y. June 24, 2019) (internal quotation marks and citation omitted).

## III.    <u>DISCUSSION</u>

The Court construes Plaintiff's Amended Complaint to assert constitutional claims under the Eighth Amendment for medical indifference.

The Eighth Amendment to the U.S. Constitution prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. Plaintiff generally alleges that Defendants violated the Eighth Amendment by failing to provide (1) adequate treatment for his keloid and associated pain; (2) adequate treatment for his hernia; (3) a timely colonoscopy considering his gastrointestinal issues; (4) and a single cell in light of his mental health issues.

The Supreme Court has long recognized that prison officials violate the Eighth Amendment if they are deliberately indifferent to the serious medical needs of a sentenced prisoner. *See Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The prisoner must show that "(1) objectively, the alleged deprivation of medical care was 'sufficiently serious,' and (2) subjectively, that the defendants acted or failed to act 'while actually aware of a substantial risk that serious inmate harm will result.'" *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006)). A prisoner must allege facts to suggest that the defendants

acted not merely carelessly or negligently, but with a subjectively reckless state of mind akin to criminal recklessness. *Dunbar v. Dep't of Correction*, No. 3:22-CV-627 (JAM), 2023 WL 143164, at *5 (D. Conn. Jan. 10, 2023). It is not enough to allege medical malpractice unless the malpractice involves culpable recklessness—actions that evince a conscious disregard of a substantial risk of serious harm. *See Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

To be "sufficiently serious," the deprivation of medical care must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hill*, 657 F.3d at 122. Where a prisoner receives some care, but allegedly inadequate care or a delay in the care, the court's consideration of the seriousness of the plaintiff's condition must examine both the prisoner's medical conditions and the harm caused by the offending conduct. *Lombardo v. Graham*, 807 F. App'x 120, 123 (2d Cir. 2020) (courts examine both the seriousness of the prisoner's medical conditions and the harm caused by any unreasonable delay).

Additionally, for each defendant against whom he seeks damages, Plaintiff must allege the personal involvement of the defendant in the constitutional violation. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983") (internal citation and quotation marks omitted).

On prior initial review, the Court determined that Plaintiff had not alleged any plausible Eighth Amendment deliberate indifference to his serious medical needs by the DOC or UConn medical defendants. (ECF No. 7 at 7.) The Court explained that Plaintiff's allegations indicated that medical staff had examined and treated his keloid and hernia on multiple occasions over the years, and that Plaintiff's disagreements with his medical providers' treatment decision do

not support an Eighth Amendment violation. *Id.* at 7-8 (citing *Chance*, 143 F.3d at 703, and *Hill*, 657 F.3d at 123). The Court noted further Plaintiff did not allege a plausible Eighth Amendment claim on the basis of his delayed colonoscopy because "inmates do not have a constitutional right to perfectly on-schedule routine, preventative health screenings." *Id.* at 8 (citing *Ostroski v. Doe*, 2012 WL 5448331 at *3 (D. Conn. Nov. 7, 2012) (colonoscopy scheduling delay did not give rise to a cognizable deliberate indifference claim)).

Plaintiff's Amended Complaint fails to correct these deficiencies. Although Plaintiff states that Drs. Naqvi, Pillai, Lupis, Liang, Chen, Morozov, Jhorar, and Waldman and MBBS Al-Houssan "failed to follow through with [his] health care," such conclusory allegations do not suffice to suggest direct personal involvement in a constitutional violation. *See Darby v. Greenman*, 14 F.4th 124, 131 (2d Cir. 2021). In addition, Plaintiff fails to allege any specific allegations to describe how Dr. Reid Waldman (who is a newly added defendant to this action), Dr. Pillai, or APRN Morozov acted with conscious disregard of Plaintiff's serious medical needs.

However, the Court notes that Plaintiff alleges that APRN Caplan acted dismissively and failed to recognize his keloid condition as a medical condition. At this initial stage in the matter, the Court considers these allegations sufficient to suggest that APRN Caplan acted with deliberate indifference to his serious medical needs for his keloid and associated pain. Thus, the Court will permit Plaintiff to proceed with further development of the record on his Eighth Amendment claim for damages arising from Defendant Caplan's alleged deliberate indifference to his keloid condition and associated pain.

## A.      Single Cell for Mental Health Needs[1]

The Eighth Amendment prohibits deliberate indifference to an inmate's serious mental health needs. *See Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). Plaintiff complains about not being afforded a single cell despite suffering mental health issues arising from agonizing bathroom issues. Plaintiff alleges that he requested a single cell status—due to his mental health needs—from APRN Caplan, Dr. Pieri, and Warden Barone, and was only able to obtain a single cell by filing a state habeas action.

For purposes of initial review, the Court assumes that Plaintiff had a serious need for single cell status due to his mental (and physical) health. At this stage of the litigation, and mindful of the Second Circuit's directive that *pro se* pleadings be liberally construed, the Court concludes that Plaintiff's claims would benefit from further development of the record and the adversarial process. Thus, the Court will permit Plaintiff to proceed on his Eighth Amendment damages claims against Defendants APRN Caplan, Dr. Pieri, and Warden Barone for their deliberate indifference to his serious mental health need for a single cell.

## B.      Supervisory Liability

Plaintiff also asserts damages claims for Eighth Amendment violations against DOC Director of Health Doe (Jane/John), former DOC Commissioners Lantz, Arnone, Semple, and Cook, current DOC Commissioner Quiros, UConn Health CEO John Doe, and MacDougall Wardens Murphy, Strange, Chapdelaine, and Mulligan.

---

[1] Plaintiff complains about Dr. Pieri's treatment decisions to provide him pills for his mental health. But his allegations only suggest his disagreement with her professional medical judgment without suggesting that she acted with deliberate indifference to his mental health needs. *See Chance*, 143 F.3d at 703.

The Second Circuit has held that "there is no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Instead, "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* (internal citation and quotation marks omitted). Accordingly, for deliberate indifference claims, "the plaintiff must plead and prove that the supervisor had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it." *Id.* at 616. Plaintiff cannot seek to hold a supervisory defendant liable for damages merely on the basis of their supervisory positions. *See id.* at 618.

To the extent Plaintiff claims that he received no response to his letters, requests, or written communications to any supervisory defendant, mere receipt of a communication is insufficient to show personal involvement. *Lopez v. Chappius*, No. 6:17-CV-96395 (EAW), 2021 WL 859384, at *2 (W.D.N.Y. Mar. 8, 2021) ("Even before *Tangreti*, it was well-established that a supervisor's failure to respond to a letter of complaint does not provide a sufficient basis to find the defendant was personally involved in the deprivation alleged[.]") (internal citation and quotation marks omitted); *Tangreti*, 983 F.3d at 616–17 ("A supervisor's 'mere knowledge ...' is not sufficient because that knowledge does not 'amount[ ] to the supervisor's violating the Constitution.'") (internal citation omitted).

Absent sufficient factual allegations to suggest involvement by these supervisory defendants in the alleged Eighth Amendment violation, Plaintiff's Amended Complaint fails to allege that any of these defendants were aware of, but acted with a conscious disregard to, any serious risk of substantial harm to Plaintiff's health or safety. *See Hunter v. Quiros*, No. 3:22-CV-1525 (VAB), 2023 WL 348111, at *3 (D. Conn. Jan. 20, 2023) (dismissing Eighth Amendment claims absent facts showing a subjective knowledge of the risk faced by Plaintiff).

Accordingly, the Court will dismiss Plaintiff's claims for damages based on Eighth Amendment violation against Defendants DOC Director of Health Doe, former DOC Commissioners Lantz, Arnone, Semple, and Cook, current Commissioner Quiros, UConn Health CEO John Doe, and Wardens Murphy, Strange, Chapdelaine, and Mulligan.

### C.    Official Capacity Claims

Plaintiff seeks official capacity relief. As an initial matter, Plaintiff may not proceed against the defendants in their official capacity for damages. This is so because the Eleventh Amendment bars a federal court from holding the DOC or any DOC employees in their official capacity liable for money damages. *See Kelly v. N.Y. State Unified Ct. Sys.*, 2022 WL 1210665, at *1 (2d Cir. Apr. 25, 2022).

Plaintiff may seek injunctive relief against a state official only to the extent that he alleges an ongoing violation of the constitutional rights for which a federal court may enter an order of prospective relief against that official in his official capacity. *See, e.g.*, *Va. Off. for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)); *Silva v. Farrish*, 47 F.4th 78, 84 (2d Cir. 2022). The personal involvement of a defendant in the alleged constitutional violation is not a prerequisite to official capacity claims for injunctive relief, but a claim for injunctive relief against an official capacity defendant may proceed only to the extent that the defendant has the authority to remedy the alleged ongoing constitutional violation. *Breton v. Lamont*, No. 3:21-CV-719 (SRU), 2021 WL 3726011, at *7 (D. Conn. Aug. 23, 2021) (internal citations omitted).

Plaintiff seeks injunctive orders for a colonoscopy and medical care for his hernia and keloid. Plaintiff's allegations raise at least an inference that he is subject to ongoing deliberate

indifference to his medical needs for his keloid.[2] However, the Court must dismiss any requests for official capacity relief against MacDougall employees because Plaintiff is no longer housed at MacDougall. *See Washington v. McKoy*, 816 F. App'x 570, 572–73 (2d Cir. 2020) ("'In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.'") (internal citation omitted).

However, it is at least plausible that Commissioner Quiros could afford Plaintiff the requested relief to remedy the alleged ongoing indifference to his keloid condition. Thus, the Court will permit Plaintiff to proceed on his requests for injunctive relief for ongoing deliberate indifference to his keloid condition against Commissioner Quiros in his official capacity.

The Court must dismiss Plaintiff's request for a court order for DOC to update its medical system and eliminate the inmate co-pay. Federal courts can order prospective relief "in any civil action with respect to prison conditions," provided it "extend[s] no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a). Thus, the Court must reject Plaintiff's request for any remedial orders "that unnecessarily reach out to improve prison conditions other than those that violate the Constitution." *See Brown v. Plata*, 563 U.S. 493, 531 (2011). Likewise, Plaintiff's request for an order to protect him from First Amendment retaliation exceeds the scope of any alleged Eighth Amendment violation raised in the Amended Complaint.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court enters the following orders:

---

[2] As previously discussed, Plaintiff has not alleged any plausible deliberate indifference related to his need for a colonoscopy or medical care for his hernia.

(1) Plaintiff may **proceed** on his Eighth Amendment individual capacity claims for damages against (a) APRN Jean Caplan for her deliberate indifference to his medical needs arising from his keloid condition, and (b) against APRN Caplan, Dr. Pieri, and Warden Barone for deliberate indifference to his mental health need to have a single cell.

(2) Plaintiff may also **proceed** on his claim for injunctive relief for Eighth Amendment violations related to his keloid condition against Commissioner Quiros in his official capacity.

(3) All other claims and defendants are **DISMISSED**. **The Clerk shall** terminate as defendants in this action Drs. Pillai, Naqvi, Jhorar Waldman, Lupis, Liang and Chen; MBBS Al-Houssan; DOC Commissioners Lantz, Arnone, Semple, and Cook; DOC Director of Health Doe (Jane/John); UConn Health CEO Doe; Warden Murphy, Warden Strange, Warden Chapdelaine, and Warden Mulligan; and APRN Morozov.

(4) **The Clerk shall** verify the current work addresses for named defendants APRN Jean Caplan, Dr. L. Pieri, and Warden Barone with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the Amended Complaint (ECF No. 15) and this Order to them at their confirmed addresses within **twenty-one (21) days of this Order**, and report to the Court on the status of the waiver request by not later than the **thirty-fifth (35th) day after mailing**. If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on them, and that defendant shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(5) **Within twenty-one (21) days of this Order**, the U.S. Marshals Service shall serve the summons, a copy of the Amended Complaint, and this Order on Defendant Commissioner Quiros in his official capacity by delivering one copy of the necessary documents in person to the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06160.

(6) **The Clerk shall** email a courtesy copy of the Amended Complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(7) Defendants shall file their response to the Amended Complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.

(8) The discovery deadline is **six months (180 days)** from the date of this Order. The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which the Clerk must send to plaintiff with a copy of this Order.

(9) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(10) Pursuant to Local Rule 7(a), a nonmoving party must respond to a dispositive motion (*i.e.*, a motion to dismiss or a motion for summary judgment) within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the Court may grant the dispositive motion without further proceedings.

(11) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he must indicate all of the case numbers in the notification of change of address. Plaintiff must also notify the defendants or defense counsel of his new address.

(12) Plaintiff shall utilize the Prisoner E-Filing Program when filing documents with the Court. He is advised that the Program may be used only to file documents with the Court. As discovery requests are not filed with the Court, the parties must serve discovery requests on each other by regular mail.

<strong>SO ORDERED.</strong>

Hartford, Connecticut
March 8, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge